# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CHERYL A. NAULT,**

          **Plaintiff,**

**-vs-**                                               **Case No. 6:08-cv-682-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act. For the reasons set forth herein, the decision is **AFFIRMED.**

### *PROCEDURAL HISTORY*

On December 1, 2004, Plaintiff applied for benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (R. 55-57). The application was denied initially and upon reconsideration (R. 40-43, 45-47). Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ"), and on August 15, 2007, the ALJ issued a decision denying Plaintiff's application (R. 15-23). On February 28, 2008, the Appeals Council denied Plaintiff's request for review (R. 6-8), making the ALJ's decision the final decision of the Commissioner. This action timely followed (Doc. No. 1).

The parties consented to the jurisdiction of the United States Magistrate Judge and the matter is now briefed and ready for resolution.

## NATURE OF CLAIMED DISABILITY

Plaintiff initially alleged disability beginning on March 8, 2003, but later amended her onset date to January 1, 2005, asserting disabling symptoms related to multiple sclerosis (herein"MS") (R. 55, 235-36).

*Summary of Evidence before the ALJ*

Plaintiff was 50 years old at the time of the ALJ's decision, with a high school education and past relevant work experience as an administrative clerk, receptionist, order clerk, store manager, office manager, and sales person (R. 55, 230).

The medical evidence relating to the pertinent time period is presented in the ALJ's detailed opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. By way of summary, the medical evidence includes treatment notes from Plaintiff's neurologists and family physician, MRI's and other testing results, and reports from consultative examiners, as well as non-examining state agency reviewers. The medical evidence established a diagnosis of MS, and detailed the treatment Plaintiff was receiving for her symptoms. Other non-medical evidence of record includes reports from Plaintiff and her husband, and the testimony of Plaintiff and a Vocational Expert at her hearing.

Based on his review of the evidence, the ALJ found that Plaintiff had the following severe impairments: Multiple Sclerosis ("MS"), memory problems and fatigue (R. 17, Finding 3). The ALJ concluded that Plaintiff could perform a full range of light work with seizure precautions (R. 19, Finding 5). Relying on the testimony of the Vocational Expert, the ALJ determined that Plaintiff could perform her past work as a receptionist, order clerk, retail manager, and office manager (R. 22, Finding 6), and was therefore not disabled pursuant to 20 C.F.R. § 404.1520(g) (R. 23, Finding 7).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff raises three issues in challenging the administrative decision: 1) whether the ALJ erred in formulating Plaintiff's residual functional capacity ("RFC") finding, in view of the opinion of the treating physician; 2) whether the ALJ adequately addressed the opinions of the consultative physicians; and 3) whether the ALJ properly evaluated Plaintiff's credibility. The Court addresses each, in turn.

**Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Plaintiff frames her first issue as whether the ALJ erred in determining that the claimant has the residual functional capacity to perform light work with seizure precautions when the treating physician indicated that the claimant had a more restrictive residual functional capacity, and no other examining physician indicated that the claimant had the residual functional capacity as determined by the ALJ. The Court finds no error in the ALJ's evaluation of the "opinion" of the treating physician.

The record includes treatment notes from three treating physicians, covering the time period at issue. The opinion at issue comes from Plaintiff's first neurologist, Dr. Ortolani. Plaintiff saw neurologist Dr. Ortolani from November 2001 until January 2006 (R. 187-210). On July 11, 2005, Dr. Ortolani partially completed a residual functional capacity questionnaire regarding Plaintiff (R. 181-186). In the form, Dr. Ortolani noted that Plaintiff experienced the following symptoms: fatigue; balance problems; poor coordination; weakness; unstable walking; numbness and tingling; sensory disturbance; bowel problems; sensitivity to heat; pain; difficulty remembering; depression; difficulty solving problems; problems with judgment and double or blurred vision. (R. 181). The doctor also indicated that Plaintiff had problems with her motor functioning, and would often fall or trip (R. 182). Furthermore, Dr. Ortolani found Plaintiff's experience of pain, fatigue or other symptoms severe enough to "constantly" interfere with her concentration and attention, and concluded that Plaintiff was incapable of even a "low stress" job. *Id.* These severe limitations, according to Dr. Ortolani, have been in effect, with "constant" exacerbations since 2002 (R. 182-83).

The ALJ "considered but rejected" this opinion, finding it to be "contrary to [the doctor's] own internal notes"; "contradicted by his own objective findings and notes of improvement"; "not well supported by medically acceptable clinical and laboratory diagnostic techniques"; and "inconsistent with other substantial medical evidence and nonmedical evidence of record." (R. 20). Plaintiff

-5-

contends that this determination is neither accurate nor sufficient to discount the opinion of the treating physician.

The ALJ's conclusion that Dr. Ortolani's treatment notes are contrary to his July opinion is supported by substantial evidence. Following Plaintiff's diagnosis, Dr. Ortolani treated Plaintiff conservatively and saw her only a few times a year. He prescribed Copaxone, steroids and folic acid, advised her to go on a diet, and encouraged her to exercise more (R. 197-201). By March 2004, he noted that she was "doing better" and having fewer symptoms (R. 192). On September 23, 2004, Plaintiff "seemed to be doing better" and her MS remained "stable," although she was still very tired (R. 191). On December 14, 2004, Plaintiff was reported as doing "reasonably well" and it was noted that her most recent MRI showed no new lesions and no enhancements (R. 190). Her medication was "helping her energy level" and overall she was "fairly stable." *Id.* Even at her June 2005 appointment, a month prior to the July 2005 opinion, Dr. Ortolani reported that Plaintiff's MS was stable and she "seems to be doing reasonably well." (R. 189). Although the doctor noted that Plaintiff "still has some problems," notably with walking, tingling of the feet, memory and concentration, he opined that nonetheless,"overall she seems to do reasonably well as far as the stability of her MS is concerned" (R. 189).

The next treatment note is dated the same date as the opinion – July 11, 2005 (R. 188). Although Plaintiff was reported to be doing "about the same at this time," Dr. Ortolani pronounced her "incapable of working at this stage," due to "a moderate amount of problems with memory, thinking and concentration." *Id.*

Dr. Ortolani's treatment records up to the point of the date of the doctor's opinion do not reflect the complete inability to function presumed in his July opinion. Indeed, there are no notations reporting Plaintiff frequently falling or tripping, nor are there overwhelming complaints of sensitivity

to heat or pain, judgment problems or other "constant" exacerbations of Plaintiff's MS since 2002. Rather, as noted by the ALJ, even though Plaintiff had certain issues, Dr. Ortolani repeatedly found Plaintiff to be doing reasonably well despite these issues, with her MS stable.[1]

The ALJ's finding that Dr. Ortolani's opinion was inconsistent with other medical evidence is also well supported. Connie True, M.D., Plaintiff's primary care physician, saw Plaintiff on November 18, 2004 and again, six months later in April 2005 (R. 151,154). On her first visit to Dr. True, Plaintiff reported fatigue, intermittent left sided numbness and occasional headache (R. 154). Objective examination was unremarkable and all labs were negative. Diagnosis was MS and fatigue and Plaintiff was to return in six months for a physical. *Id.* No restrictions or specific treatment was prescribed. On return visit, examination was again normal and Plaintiff complained only of constipation (Doc. No. 151). These records do not support the constant and complete exacerbation of her disease suggested by Dr. Ortolani.

In 2006, Plaintiff started seeing a new neurologist, due to a change in her insurance. Dr. Kolluri began treating Plaintiff in August 2006, and he assessed no restrictions or limitations (R. 218). Contrary to Dr. Ortolani's opinion, Plaintiff did not appear to have significant memory or concentration problems on her August 2006 examination. Although she reported "on and off" trouble with her memory, it was noted that she was alert and oriented and a good historian (R. 219) and cognitive therapy and rehabilitation was recommended (R. 214, 220). Moreover, her gait was "unremarkable." (R. 220). On October 2006, a new MRI was interpreted to show no new enhancing lesions, but did show two new lesions (R. 213). Examination was unremarkable, and Dr. Kolluri noted that she was "pretty stable" except for "some fatigue" (R. 213).

---

[1]Plaintiff saw Dr. Ortolani only once more, in January 2006 (R. 187). At that time, Plaintiff reported problems with her gait, and balance and with swallowing solids. Dr. Ortolani noted that these were "typical symptoms" and he reassured Plaintiff "that they would improve." *Id.* Indeed, they did improve. *See* R. 218, 220 (noting "occasional" trouble with swallowing and an "unremarkable" gait).

The ALJ's determination to discount the opinion of Dr. Ortolani was made in accordance with proper standards and is supported by substantial evidence.

**Consultative Examiners**

Plaintiff next contends that "the ALJ erred in failing to adequately consider the opinion of the examining consultative physicians who concluded that the claimant would have significant exertional limitations in regards to her ability to stand and lift." (Brief at 16). This statement is based on an inaccurate premise.

Plaintiff was examined by Dr. Alvan Barber on February 23, 2005 (R. 111). Mental status was normal, with "no memory deficit," Plaintiff walked without difficulty, and she had some decreased range of motion due to pain and tight muscles (R. 113-118). Dr. Barber assessed MS "as per documentation" and noted that Plaintiff "could" be limited in walking and standing for long periods of time; lifting and carrying heavy objects; and to activities that require the use of upper body movements and coordinated activities with hands (R. 114). A finding that Plaintiff "could" be limited in *extended* periods of walking and standing or in lifting *heavy* objects is not a finding that Plaintiff has *current significant* limitations in her ability to stand and lift. Moreover, there is no showing that the ALJ's finding that Plaintiff could return to her past work of clerk, receptionist and office manager (sedentary to light work positions) contemplates extended periods of walking and standing and lifting heavy objects.

Nor is the Court persuaded by Plaintiff's contention that the ALJ "ignored" the opinion of Dr. Barber and the consultative psychologist, Dr. Graham (Brief at 18). Although it is true that the ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore" *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987), the ALJ set forth the details of the

examinations in his decision (R. 21), as evidence supporting the RFC finding. (See also R. 22, specifically crediting Dr. Graham's opinion).

The Court also disagrees with Plaintiff's assertion that Dr. Graham's examination found significant memory issues that would have an effect on Plaintiff's ability to perform her past work. In the February 2005 examination, Dr. Graham noted "no problems in recent or remote memory" nor in attention or concentration (R. 121). Although Dr. Graham diagnosed "probable amnestic disorder due to [MS]," Plaintiff's scores were still all in the borderline or low average range of memory functioning (R. 121). The Court sees no error in the evaluation of the consultative examiners reports.

**Credibility**

Plaintiff's final assertion is that the ALJ erred in finding her to be not entirely credible when the record reveals that she suffers from impairments causing significant limitations. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff asserts that the ALJ found her assertions to be not credible solely based on the "longitudinal medical evidence of record" pre-dating her onset (Brief at 19). This is not an accurate statement of the credibility finding. As noted by the ALJ in his determination, in making the credibility determination, the ALJ considered "all of the objective and subjective evidence of record," which he detailed at length in his opinion (R. 21-22). He specifically noted Dr. Ortolani's comments

that Plaintiff was doing reasonably well,[2] credited Dr. Graham's 2005 finding that Plaintiff had no problems in recent or remote memory, concentration, or attention, Dr. Kolluri's 2006 findings that the MS was stable, and the 2006 MRI, which showed no new enhancing lesions (R. 22). All of these findings are after the date of alleged onset and all are supported by substantial evidence. There is no legal error.

A final note is in order. There can be no doubt that Plaintiff has MS and related symptoms. MS is a terrible disease, highly variable in its effects, severity, and amenability to treatment. It is generally chronic and often progressive in its course. While the Court has every reason to believe that Plaintiff's struggles with her condition are real and result in certain limitations, it is not the task of this Court to re-weigh the evidence and make its own determination as to the extent of those limitations. The ALJ determined that Plaintiff's condition limited her, but did not render her disabled under the law at the time period under consideration. At issue is whether this determination is supported by substantial evidence and was made in accordance with proper legal standards. As the Court finds this to be the case, the decision must be affirmed.

## CONCLUSION

For the reasons set forth above, the decision is **affirmed.** The Clerk is directed to enter judgment accordingly and to close the file.

**DONE** and **ORDERED** in Orlando, Florida on April 27, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[2] This opinion was reiterated in June 2005, which is post-date of alleged onset (R. 189).